UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEFFREY D. LEISER,

               Plaintiff,

   v.                                    Case No. 25-cv-1621-pp

CARA LENZ, *et al.*,

               Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4), DENYING AS MOOT PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF (DKT. NO. 2) DENYING PLAINTIFF'S AMENDED MOTION FOR INJUNCTIVE RELIEF (DKT. NO. 10), AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Jeffrey D. Leiser, who is incarcerated at Redgranite Correctional Institution and is representing himself, filed an amended complaint under 42 U.S.C. §1983, alleging that the defendants had violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, and screens his amended complaint, dkt. no. 8. It also addresses the plaintiff's motion and amended motion for injunctive relief, dkt. nos. 2, 10.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds

1

exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 13, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $54.61. Dkt. No. 7. The court received that fee on December 8, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II.    Screening the Amended Complaint

### A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

2

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.      The Plaintiff's Allegations

The plaintiff sues Cara Lenz, education director at Redgranite Correctional Institution; Daisy Chase, warden at Redgranite; K. Stumpner, librarian; Eric C. Barber, deputy warden; T. Moon, inmate complaint examiner; E. Davidson, corrections complaint examiner at the Wisconsin Department of Corrections (DOC); and C. O'Donnell, secretary of the DOC. Dkt. No. 8 at 2-3.

The plaintiff alleges that on April 11, 2025, Stumper informed him and other "jailhouse litigators" that the DOC had a new policy regarding jailhouse litigators helping other incarcerated individuals with their legal work, DAI 309.15.01. Id. at ¶3. The new policy, effective March 24, 2025, states:

G. PIOC [Person in Our Custody] to PIOC legal assistance

1. PIOC may request to work together on a legal case provided they live on the same housing unit.

2. PIOC shall obtain permission from the Education Director or Librarian to work together on legal matters.

a. Notification must be made in advance by submitting a DOC 0643 from both parties with the specific time and case being worked on.

b. No additional time will be granted and it must be on unit law library time.

c. The work shall be done during the regular law library time of the PIOC whose case is being prepared.

d. Only one storage device may be checked out. All work saved to this device must be in the PIOC's name.

e. Only one work station shall be utilized for the PIOC who are working together on a legal case.

f. Assistance includes: advice, typing, research and proofreading.

g. Joint legal endeavors that do not meet the above criteria must utilize the US mail system.

3. Compensation of any kind for this assistance is prohibited.

Dkt. No. 10-1 at 1.

Under the policy, the plaintiff allegedly can't help incarcerated individuals with their legal work in person unless he and the other individual

4

live on the same unit. Dkt. No. 8 at ¶5. The plaintiff alleges that if an incarcerated individual violates the policy, he is sent to segregation. Id. He states that the policy forces incarcerated individuals to use the DOC's contracted mailing system, TextBehind, if they want assistance from a jailhouse litigator who is not on the same unit. Id. at ¶8. This allegedly is costly because incarcerated individuals must pay postage to send documents through the mail, and it delays litigation because it takes four to six weeks to receive mail through TextBehind. Id.

The plaintiff alleges that on November 24, 2025, he was caught transferring another incarcerated individual's "Writ of Habeas" from that individual's thumb drive to the plaintiff's thumb drive; he says that he was making this transfer because the individual had a federal court deadline by which to file his petition. Id. at ¶10. Stumpner allegedly gave the thumb drives to Lenz to investigate, and Lenz told the plaintiff and the other incarcerated person that they would receive a conduct report. Id. The plaintiff states that the next day he was taken to segregation and placed on TLU for "allegedly Enterprising and Fraud 303.53; 303.28 disobeying orders; DOC 303.39 Misuse of state or federal property." Id. at ¶11. The plaintiff states that after fifteen days in segregation, he was found guilty and given sixty-five days loss of library. Id. He says that this was all because he helped another incarcerated individual. Id. The plaintiff asserts that the individual he helped has a cognitive disorder, is mentally ill, has cerebral palsy, has a low IQ and didn't know he had evidence of his innocence. Id. at ¶12. The plaintiff asserts that an

injunction is necessary because there are innocent people in prison "with no hope but a jailhouse litigator that knows what he's doing." Id. at ¶13. He contends that on December 19, 2025, Lenz made the plaintiff delete the incarcerated individual's writ of *habeas corpus* from his thumb drive. Id. at ¶14. Based on the new policy, the plaintiff allegedly cannot have legal documents on his drive even though he wrote them. Id.

The plaintiff alleges that since the new policy was enacted, jailhouse litigators at Redgranite have been punished for helping illiterate, mentally ill and uneducated incarcerated individuals access the courts. Id. at ¶15. He says that he has been given "numerous conduct reports and warnings" for helping other incarcerated individuals. Id. He asserts that he has been "wrongfully found guilty of enterprising and fraud as well as contraband warning & tickets for helping/assisting others protect their constitutional rights[.]" Id.

The plaintiff alleges that Moon, Davidson and the Office of the Secretary allowed the Redgranite defendants to violate the United States Supreme Court law of Johnson v. Avery, 393 US 483. 487 (1969). Id. at ¶16. The plaintiff alleges that Lenz and Stumpner retaliated against him for helping other incarcerated individuals access the courts. Id. at ¶17. The plaintiff alleges that since the new policy has gone into effect, he has been forced to "send out" his thumb drives, sent to segregation, lost his library privileges and been confined to his room "all for engaging in a protected conduct of assisting others protect their constitutional right to access the court." Id. The plaintiff states that he and other jailhouse litigators are being punished for helping other incarcerated

6

individuals who are illiterate, uneducated, untrained and mentally challenged. Id. at ¶20.

The plaintiff claims that the new policy infringes all incarcerated individuals' rights to access the courts. Id. at ¶22. He concludes that the defendants are impeding jailhouse litigators' constitutional right to help others. Id. at pp. 9-10. For relief, he asks the court to issue injunctive relief ordering the Redgranite defendants to cease enforcement of the new policy. Id. at 10.

C.      Analysis

Incarcerated individuals have a qualified right to assistance from "jailhouse lawyers" as part of their right of access to the courts. See Johnson v. Avery, 393 U.S. 483, 490 (1969) (state may not enforce a regulation barring incarcerated individuals from assisting other incarcerated individuals in preparing petition for post-conviction relief, unless the State provides a reasonable alternative to assist incarcerated individuals). But incarcerated individuals do not have a First Amendment right to act as a jailhouse lawyer "above and beyond the protection normally accorded prisoners' speech." See Shaw v. Murphy, 532 U.S. 223, 232 (2001) (holding that incarcerated individual does not "possess a special First Amendment right to provide legal assistance to fellow inmates"); see also Beese v. Todd, 35 F. App'x 241, 244 (7th Cir. 2002) (stating argument that incarcerated individual has right to provide legal assistance to other incarcerated individuals "lacks a basis in law"); Lindell v. Pollard, 558 F. Supp. 3d 734, 749-50 (E.D. Wis. 2021) (it is not clearly established that incarcerated individual has First Amendment right to

7

help other incarcerated individual file inmate complaints and psychological-services requests); <u>Leiser v. Canziani</u>, Case No. 16-CV-860, 2019 WL 959681, at *10 (W.D. Wis. Feb. 27, 2019) (noting that there is "no clearly established right to act as a jailhouse lawyer"). <u>But see</u> <u>Higgason v. Farley</u>, 83 F.3d 807, 810 (7th Cir. 1996) (stating that incarcerated individual has a claim under §1983 if he is transferred "for assisting others in exercising their right of access to the courts"); <u>Buise v. Hudkins</u>, 584 F.2d 223, 231 (7th Cir. 1978) (holding that jailhouse lawyer "may have First Amendment associational rights in writ writing"); <u>Harris v. Walls</u>, 604 F. App'x 518, 521 (7th Cir. 2015) (indicating that helping another incarcerated individual access the courts may satisfy the first element of a retaliation claim).

Prison officials may restrict an incarcerated individual's First Amendment right to free speech if the restriction is "reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 87 (1987). To analyze whether a restriction is reasonably related to legitimate penological interests, the Supreme Court set out four factors: (1) the existence of a "valid, rational connection" between the regulation and a legitimate, neutral government interest; (2) the existence of alternative methods for the incarcerated individual to exercise his constitutional right; (3) the effect the incarcerated individual's assertion of that right will have on the operation of the prison; and (4) the absence of an obvious, easy alternative method to satisfy the government's legitimate interest. <u>Id.</u> at 89-91. Once defendants make a showing as to the first factor, the burden shifts to the plaintiff to

adduce evidence with respect to the other three elements. <u>Singer v. Raemisch</u>, 593 F.3d 529, 536-37 (7th Cir. 2010) ("[T]he burden shift[s] to the prisoner once the prison officials provide the court with a plausible explanation."); <u>Jackson v. Frank</u>, 509 F.3d 389, 391 (7th Cir. 2007) ("When challenging the reasonableness of the prison's regulation, the inmate bears the burden of persuasion.").

The challenged policy does not prohibit the plaintiff from acting as a jailhouse lawyer; it limits his ability to do so. Under the policy, jailhouse litigators may assist other incarcerated individuals who live on the same housing unit with their legal work as long as they comply with the rules regarding providing assistance. Jailhouse litigators also may help incarcerated individuals who do not live on the same housing unit via the institution's TextBehind system, which requires incarcerated individuals to mail their documents to a third party. The plaintiff complains that this is costly and that it delays litigation because it takes four to six weeks to receive a document via TextBehind.

The DOC presumably has legitimate reasons for limiting an incarcerated individual's ability to help other incarcerated individuals with their legal work. The court "must afford substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." <u>Overton v. Bazzetta</u>, 529 U.S. 126, 132 (2003). For example, in another of the plaintiff's cases, he did "not dispute

that the defendants have a legitimate interest in ensuring that prisoners do not engage in the practice of law for compensation, since this is illegal, see Wis. Stat. § 757.30(2), and a violation of DOC policy, see Wis. Admin. Code § 303.36(1)(a)." Leiser, No. 16-CV-860, 2019 WL 959681, at *5; see also Shaw, 532 U.S. at 231 (jailhouse litigators sometimes are a menace to prison discipline, and incarcerated individuals have an acknowledged propensity to abuse both the giving and seeking of legal assistance).

The plaintiff does not have an enhanced First Amendment right to help other incarcerated individuals with their legal work, but he does have a First Amendment right to free speech. See Shaw, 532 U.S. at 232. Although the court can envision security justifications for the challenged policy, at the screening stage it would be premature for the court to presume such justifications. See Lindell v. Frank, 377 F.3d 655, 657-58 (7th Cir. 2004). The court will allow the plaintiff to proceed on a First Amendment free speech claim based on his allegations that the challenged policy violates his First Amendment rights.

The plaintiff also alleges that Lenz and Stumpner retaliated against him for helping another incarcerated individual, apparently in violation of the challenged policy. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d

10

768, 783 (7th Cir. 2015) (quoting <u>Bridges v. Gilbert</u>, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff may proceed on a retaliation claim against Lenz and Stumpner based on the allegations in his amended complaint.

Although the plaintiff states that he is suing the defendants in their individual and official capacities, he seeks only injunctive relief requiring the court to order the defendants to "cease and desist" enforcement of the policy. Section 1983 does not allow a plaintiff to seek "injunctive relief against state officials sued in their individual as distinct from their official capacity." <u>Collier v. Ill. Dep't of Hum. Servs.</u>, Case No. 21-CV-6239, 2023 WL 12040082, at *5 (N.D. Ill. Mar. 31, 2023) (quoting <u>Greenawalt v. Ind. Dep't of Corr.</u>, 397 F.3d 587, 589 (7th Cir. 2005)). Because the plaintiff seeks only injunctive relief, he cannot sue the defendants in their individual capacities.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (citations omitted). A state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because "official-capacity actions for prospective relief are not treated as actions against the State." <u>Id.</u> at 71 n.10 (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985)). The plaintiff's retaliation claim involves Lenz and Stumpner—who also are the two defendants who allegedly enacted the policy at Redgranite—along with Chase. The court will allow the plaintiff to proceed on official capacity claims against Lenz, Stumpner and Chase.

11

The court will dismiss defendants Barber, Moon, Davidson and O'Donnell. The complaint does not contain any allegations against Barber. As for Moon, Davidson and O'Donnell, the plaintiff alleges only that they allowed the Redgranite defendants to violate his rights. But it is not clear how allowing the plaintiff to proceed against these defendants would add anything to his official capacity claim for injunctive relief.

### III.    Plaintiff's Motions for Injunction (Dkt. Nos. 2, 10)

When the plaintiff filed his original complaint, he also filed a motion for injunctive relief under Fed. R. Civ. P. 65. Dkt. No. 2. Along with his amended complaint, the plaintiff filed an amended motion for injunctive relief. Dkt. No. 10. Because the amended motion replaces the original motion, the court will deny the original motion as moot.

In his amended motion for injunctive relief, the plaintiff states that Wisconsin Administrative Code §309.155(5), "Inmate to Inmate Legal Services," provides that "inmates may provide[] legal services to other inmates, except that institution[s] may regulate the time and place of such legal services." Dkt. No. 10 at ¶2. The plaintiff states that the Wisconsin Administrative Code provision supersedes Redgranite's institutional policy. Id. He says that he has explained to the defendants that they are violating United States Supreme Court case law (Johnson v. Avery, *supra.*) that prohibits a prison policy that interferes with a jailhouse litigator assisting "illiterate, untrained, mentally challenged inmates." Id. at ¶3.

12

The plaintiff contends that Redgranite's policy violates incarcerated individuals' and jailhouse litigators' First Amendment rights to access the courts and to assist others. Id. at p. 3. He says that without an injunction, jailhouse litigators at Redgranite cannot help other incarcerated individuals on different units because they cannot afford to mail thousands of court documents. Id. at ¶6. The plaintiff states that on November 25, 2025, he was punished for doing what the Supreme Court allows him to do, which is to assist others. Id. at ¶¶7-9. He says that according to DAI policy, all incarcerated individuals must use the TextBehind mailing service for personal mail. Id. at ¶13. TextBehind allegedly frequently copies documents out of order, and if an incarcerated individual sends TextBehind 1,000 pages of transcripts, it returns them out of order. Id. at ¶14.

The plaintiff states that the challenged policy denies incarcerated individuals' constitutional right to access the courts because lawyers do not represent litigants *pro bono* in criminal appeals or civil cases (unless the incarcerated person has already beat summary judgment). Id. at ¶15. He says that the policy bars jailhouse litigators from helping poor, uneducated, mentally ill, illiterate incarcerated individuals access the courts. Id. at ¶16. Jailhouse lawyers allegedly cannot even talk to other incarcerated individuals or litigators while in the law library. Id.

The plaintiff states that the policy violates his and other jailhouse litigators' clearly established constitutional rights. Id. at p. 7. He says that the defendants enacted the policy to deny incarcerated individuals access to the

13

courts and keep them from filing civil lawsuits, and that an injunction will protect and enforce the Constitution and laws of the United States. Id. The plaintiff asks the court to grant this injunction and stop the defendants from preventing jailhouse litigators from helping other incarcerated individuals access the courts. Id.

The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, a plaintiff must show that: (1) he has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) he will likely suffer irreparable harm in the absence of preliminary relief. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." Mays, 974 F.3d at 818 (citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Mays, 974 F.3d at 818 (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

In the context of litigation by incarcerated individuals, the scope of the court's authority to issue an injunction is circumscribed by the PLRA. See

14

<u>Westefer v. Neal</u>, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); <u>see also</u> <u>Westefer</u>, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

The plaintiff has not established that he has a likelihood of succeeding on the merits. As explained above, incarcerated individuals do not have a First Amendment right to act as jailhouse lawyers "above and beyond the protection normally accorded prisoners' speech." <u>See</u> <u>Shaw</u>, 532 U.S. 223, 232 (2001) (holding that incarcerated does not "possess a special First Amendment right to provide legal assistance to fellow inmates). The plaintiff states that the challenged policy violates rights of incarcerated individuals who need legal help. But those are not *his* rights, so there is some question whether he has standing to raise this claim on behalf of others. Further, the challenged policy does not prohibit the plaintiff and other jailhouse litigators from helping incarcerated individuals with their legal work; rather, it sets limits on when and how jailhouse litigators may help them. This seems consistent with the Supreme Court's decision in <u>Johnson v. Avery</u>, 393 U.S. at 491 ("[T]he State may impose reasonable restrictions and restraints upon the acknowledged

15

propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities."). The defendants need only show that the policy is reasonably related to legitimate penological interests. See Turner, 482 U.S. at 87. Because the plaintiff has not demonstrated a likelihood of success on the merits of his claim, the court will deny his amended motion for preliminary injunction.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **DENIES AS MOOT** the plaintiff's first motion for injunctive relief. Dkt. No. 2.

The court **DENIES** the plaintiff's amended motion for injunctive relief. Dkt. No. 10.

The court **DISMISSES** defendants Eric C. Barber, T. Moon, E. Davidson and C O'Donnell.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Cara Lenz, K. Stumpner and Daisy Chase. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the amended complaint within sixty (60) days.

16

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$295.39** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Redgranite Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 29th day of May, 2026.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

18