---

JEFFREY D. LEISER,

                    Plaintiff,

    v.                                  Case No. 25-cv-1621-pp

CARA LENZ, *et al.*,

                    Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO CLARIFY AND DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 12)

---

Plaintiff Jeffrey D. Leiser, who is incarcerated at Redgranite Correctional Institution and is representing himself, filed this civil rights case under 42 U.S.C. §1983. On May 29, 2026, the court screened the plaintiff's amended complaint, denied his amended motion for injunctive relief and allowed him to proceed on a First Amendment free speech claim against defendants Cara Lenz, K. Stumpner and Daisy Chase based on allegations that a recent Department of Corrections (DOC) policy limits incarcerated individuals' ability to help other incarcerated individuals with their legal work.[1] Dkt. No. 11 at 10-11. The court also allowed the plaintiff to proceed on a retaliation claim against Lenz and

---

[1] Under the policy, jailhouse litigators may assist other incarcerated individuals on the same housing unit with their legal work as long as they comply with the rules regarding providing assistance. See Dkt. No. 10-1 at 1 (excerpt from DAI Policy 309.15.01). Jailhouse litigators also may help incarcerated individuals who do not live on the same housing unit via the institution's TextBehind system, which requires incarcerated individuals to mail their documents to a third party. Id.

1

Stumpner based on allegations that they had punished him for helping another incarcerated individual with his legal work.[2] Id. The plaintiff has filed a motion asking the court to clarify or reconsider the May 29, 2026 order. Dkt. No. 12

The motion states that after reading the court's order, the plaintiff realizes that he didn't clarify certain facts in his complaint, and he asks the court to allow him to correct them. Id. at ¶1. The plaintiff asserts that he "failed to argue that it isn't just helping other inmates as a jailhouse litigator, *[the plaintiff] cannot obtain help from other jailhouse litigators either, as the defendant prohibit[s] inmates that are in the law library from talking to other inmates or litigators.*" Id. at ¶2 (emphasis in original). He asserts that the policy affects his access to the courts because he cannot ask other jailhouse litigators for help with his two appeals. Id. The plaintiff also states that he wants to correct the court's statement that Stumpner allegedly enacted the policy at Redgranite. Id. at ¶10. He says that Stumpner did not have anything to do with enacting the policy. Id.

In addition to the requests to clarify, the plaintiff contends that the court should reconsider its decision denying his amended motion for injunctive relief. Id. at p.8. The plaintiff contends that the policy violates incarcerated individuals' and jailhouse litigators' First Amendment rights to access the court and to assist others. Id. at ¶11. He asserts that without an injunction, jailhouse litigators at Redgranite cannot help other incarcerated individuals on

---

[2] Because the amended complaint seeks only injunctive relief, the court allowed the plaintiff to proceed against the defendants in their official capacities. Id. at 11.

different units because they cannot afford to mail thousands of court documents. Id. The plaintiff states that prison officials cannot bar incarcerated individuals from furnishing legal assistance to one another unless they provide a reasonable alternative to that assistance, and he says they have not provided one. Id. at ¶14. He asserts that he has demonstrated a likelihood of success on the merits based on his allegations that he suffered retaliation by being punished for what the Constitution allows (helping other incarcerated individuals). Id. at ¶16. The plaintiff says that not being able to help incarcerated individuals with their legal work unless they live on the same unit, and being threatened with conduct reports for doing so, violates his constitutional rights. Id. He states that the conduct report shows "that the defendant will punish [the plaintiff] for helping other inmates on other units, (showing irreparable harm) [and] it also shows that the inmate that [the plaintiff] was helping never received a conduct report, never went to seg, or lost any library time." Id. at ¶17. He asserts that the defendants and officers threaten him every day that he will receive a conduct report if he helps or talks to anyone. Id.

Federal Rule of Civil Procedure 54(b) allows any order adjudicating fewer than all the claims to be revised at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Fed. R. Civ. P. 54(b); Galvan v. Norberg, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (stating "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of final judgment"). "The 'standard courts apply in

3

reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b).'" Cheese Depot, Inc. v. Sirob Imports, Inc., Case No. 14-C-1727, 2019 WL 1505399 at *1 (N.D. Ill. Apr. 5, 2019) (quoting Morningware, Inc. v. Hearthware Home Prods., Inc., Case No. 09-C-4348, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011)).

Motions for reconsideration serve a very limited purpose in federal civil litigation: "to correct manifest errors of law or fact or to present newly discovered evidence." Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987) (quoting Keene Corp. v. Int'l Fidelity Ins. Co., 561 F. Supp. 656, 665-66 (N.D. Ill. 1976), aff'd 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). "Such motions are disfavored and should be 'rare.'" Acantha LLC v. DePuy Orthopaedics Inc., Case No. 15-C-1257, 2018 WL 2290715, at *1 (E.D. Wis. May 19, 2018) (quoting Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990)).

The plaintiff appears to argue that the court overlooked the fact that the DOC policy impacts his and other jailhouse litigators' access to the courts as well as that of other incarcerated individuals who are not jailhouse litigators. He mentions two appeals he currently is litigating. The plaintiff's amended complaint focuses on how the policy impacts his ability to help other

4

Case 2:25-cv-01621-NJ    Filed 07/21/26    Page 4 of 7    Document 17

incarcerated individuals, and he alleges that he was punished for helping another incarcerated individual with his legal work. Regardless, the court's screening order recognizes that the plaintiff claims that the DOC policy impacts all incarcerated individuals. Dkt. No. 11 at 7 (citing Dkt. No. 8 at ¶22). The plaintiff's clarification that the policy impacts him both as a jailhouse lawyer and as someone who may receive help from a jailhouse lawyer does not change the nature of his First Amendment free speech claim. There is no need to clarify this claim.

The plaintiff also clarifies that Stumpner, who is Kettle Moraine's librarian, was not involved in enacting the policy. He appears to state that Stumpner should not be included in his First Amendment free speech claim. The plaintiff has alleged that Stumpner retaliated against him, so she is a proper defendant for that claim. The court will grant the plaintiff's motion to clarify and recognize that because Stumpner did not enact the policy, she is not a proper defendant with respect to the plaintiff's free speech claim.

The plaintiff contends that he is entitled to injunctive relief because prison officials cannot bar incarcerated individuals from helping other incarcerated individuals with their legal work unless they provide a reasonable alternative, and they haven't provided one. The court's screening order addressed the plaintiff's amended motion for injunctive relief in which he requested that the court stop the defendants from preventing jailhouse litigators from helping other incarcerated individuals access the courts. Dkt.

5

No. 11 at 14. The court denied the plaintiff's motion for injunctive relief, stating:

> The plaintiff has not established that he has a likelihood of succeeding on the merits. As explained above, incarcerated individuals do not have a First Amendment right to act as jailhouse lawyers "above and beyond the protection normally accorded prisoners' speech." See Shaw, 532 U.S. 223, 232 (2001) (holding that incarcerated [person] does not "possess a special First Amendment right to provide legal assistance to fellow inmates). The plaintiff states that the challenged policy violates rights of incarcerated individuals who need legal help. But those are not his rights, so there is some question whether he has standing to raise this claim on behalf of others. Further, the challenged policy does not prohibit the plaintiff and other jailhouse litigators from helping incarcerated individuals with their legal work; rather, it sets limits on when and how jailhouse litigators may help them. This seems consistent with the Supreme Court's decision in Johnson v. Avery, 393 U.S. at 491 ("[T]he State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities."). The defendants need only show that the policy is reasonably related to legitimate penological interests. See Turner, 482 U.S. at 87. Because the plaintiff has not demonstrated a likelihood of success on the merits of his claim, the court will deny his amended motion for preliminary injunction.

Id. at 15-16.

The policy does not, as the plaintiff asserts, bar incarcerated individuals from helping one another. Rather, it limits when and how incarcerated individuals may help each other. Prison officials may restrict an incarcerated individual's First Amendment right to free speech if the restriction is "reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 87 (1987). The DOC presumably has legitimate reasons for limiting incarcerated individuals' ability to help other incarcerated individuals with

6

their legal work, although it would be premature at the screening stage to conclude that it does. The court "must afford substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 529 U.S. 126, 132 (2003). The plaintiff misstates the impact of the DOC policy, and he has not demonstrated that he has a reasonable likelihood of success on the merits of his First Amendment claim. The plaintiff has not shown the court erred in denying his amended motion for injunctive relief. The court will deny his motion for reconsideration.

The court **DENIES** the plaintiff's motion for reconsideration. Dkt. No. 12.

The court **GRANTS IN PART AND DENIES IN PART** the plaintiff's motion to clarify as described herein. Dkt. No. 12.

Dated in Milwaukee, Wisconsin this 21st day of July, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

7